## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOSEPH CIPCIC** ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.:** |
| ) | |
| ) | |
| **GARY GROUT** ) | |
| **and** ) | |
| **COMPETE RESTORATION** ) | |
| **SOLUTIONS, INC.,** ) | |
| **Defendants** ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Parties

1. Plaintiff Joseph Cipcic is an individual whose address is 994 Halladay Ave W in Suffield, Connecticut.

2. Defendant, Gary Grout is an individual residing at 32 Cedar Woods Glen in West Springfield, Massachusetts and is the sole owner of Complete Restoration Solutions, Inc.

3. Defendant, Complete Restoration Solutions Inc., is a Massachusetts Corporation with a principal office located at 30 Haynes Circle in Chicopee, Massachusetts.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 in that there is complete diversity between the parties, with Plaintiff

1

residing in Connecticut and both Defendants residing in Massachusetts, and the amount in controversy exceeds $75,000.

**Facts Common to all Counts**

5. Plaintiff owns and operates a residential rental property located at 715 Grattan Street in Chicopee, Massachusetts (the "premises").

6. Plaintiff previously lived at the premises, however he moved to Connecticut prior to the events alleged in this Complaint.

7. In the fall of 2020, the premises suffered fire damage.

8. On March 22, 2021, Plaintiff entered into an agreement with Defendants to restore the premises.

9. The agreement between the parties provided that defendants would perform services on the premises, including removal and repair of fire damage; demolition of the floors, walls and ceilings; reframing and repainting; inspecting for fire damage, seal, complete insulation; and electrical work and sheetrock.

10. Altogether, Plaintiff was to pay Defendants a total of $191,491.83 for the services contracted for.

11. The written contract lacked a detailed description of the work to be done and the materials to be used in the performance of the contract.

12. Plaintiff paid Defendants an initial payment of $53,000 based on the quoted price of $191,491.83, including cost of materials, to complete the work listed in the agreement.

13. Payment was meant to be paid in thirds, excluding an additional $37,000 depreciation cost.

14. Plaintiff's $51,289.37 payment was made on April 1, 2021.

15. Defendants began work on the property between April and December of 2021, conducting the following: removing walls, floors and ceilings; rough electrical work; half installation of subfloors; partial reframing and removed siding; and paint work preceding demolition.

16. After receiving the first payment, the Defendant, Gary Grout, failed to effectively communicate with the Plaintiff.

17. After several attempts to contact the Defendant, Gary Grout, directly, Aaron Murray, an employee of the Defendants, began responding in his place.

18. Plaintiff requested all the locks in the house to be changed to one single key. Defendants completely failed to act on this request.

19. Defendants failed to supply temporary power to the building, which was Plaintiff's first priority.

20. Because of the lack of power, there was no heat source to the property, causing the center drain for the roof to freeze after a major rainstorm.

21. Defendants told Plaintiff that they would pump the water off the roof but failed to do so, resulting in freezing.

22. The amount of frozen water weight on the roof caused significant cracking on the 3rd floor ceiling and walls.

3

23. Further, defendants removed the flooring and replaced it with pieces of plywood that were installed incorrectly and cut around radiators that should have been removed.

24. Defendants removed several appliances from the premises that Plaintiff requested to keep, namely, stove, refrigerator and washing machine.

25. Defendants failed to remove a refrigerator that Plaintiff requested to be removed, that was filled with rotten food.

26. Defendants failed to demolish sheet rock as promised to Plaintiff.

27. Defendants failed to dry the basement, resulting in black mold growing on the walls and floor.

28. Defendants continued to paint while they were still in the demolition phase, against Plaintiff's specific request.

29. Defendants gouged and scraped the "Trex" decking and siding when they were removing the demolition material.

30. Defendants painted items throughout the house that were to be replaced and removed.

31. Defendants left a French door unpainted yet charged Plaintiff for the service as if it were performed.

32. Defendants painted over door hinges.

33. Defendants installed incorrect and crooked framing.

34. Defendants failed to complete several other renovations throughout the building.

35. The first deadline was set for the beginning of September of 2021, however Defendant Grout did not complete the work and asked for an extension.

36. The next deadline was set for October of 2021, with Aaron Murray, an employee of the Defendants, reassuring Plaintiff that "a full team of guys" would be sent the house in the ensuing weeks in order to meet the deadline.

37. The Defendant, Complete Restoration Solutions, Inc., failed to meet the second deadline.

38. After missing the October 2021 deadline, Aaron Murray told the Plaintiff that the Defendants take on far too many jobs for the number of workers that Defendants employ.

39. Defendants' representation to Plaintiff that they had sufficient capacity to complete the work on Plaintiff's property correctly and in a timely manner was a false statement concerning a fact in which a reasonable person would consider important to the decision Plaintiff made when entering into an agreement with Defendants.

40. At the time Defendants represented to Plaintiff that they had sufficient capacity to complete the work on Plaintiff's property correctly and in a timely manner, Defendants knew or should have known that the representation was false.

41. Defendants made the representation with the intention that Plaintiff would rely on it in making his decision to hire Defendants.

42. Because of Defendants misrepresentations, the Plaintiff has suffered great financial loss.

43. Defendants failed to pull necessary permits for electrical services which they agreed to perform.

44. Defendants' failures to obtain necessary permits and the state in which they left the premises resulted in numerous building code violations.

45. Defendants' delay has caused plaintiff a loss of rental income of approximately $35,000.

46. Plaintiff has since hired other contractors who have estimated the cost to repair damage caused by Defendant to be over $45,000.

47. Despite completing only a small portion of the services agreed upon, Defendants have kept $21,000 of Plaintiff's money that they are not entitled to.

## COUNT I
### (Breach of Contract)

48. Plaintiff repeats and re-alleges paragraphs 1-47 of this Complaint.

49. Plaintiff and Defendants made an agreement, supported by consideration, that Defendants would perform repair and restoration work on the premises in exchange for over $190,000.

50. Plaintiff was and has been ready, willing and able to perform under the agreement, providing the initial $53,000 payment to Defendants.

51. Defendant has breached the agreement by failing to perform its obligations under the agreement.

52. As a result of the breach, Plaintiff has suffered damages in excess of $75,000.

## COUNT II

### (Misrepresentation)

53. Plaintiff repeats and re-alleges paragraphs 1-52 of this Complaint.

54. Defendants, in the course of their business, supplied false information to the Plaintiff, namely that Defendants had the capacity in both skill and manpower to perform their obligations under the agreement within the timeframe to which the parties agreed.

55. Plaintiff relied upon Defendants' representations to his detriment, as the delay and poor workmanship have resulted in significant financial losses to the Plaintiff.

56. Defendants should have exercised care when taking on the project and should not have agreed to the timeline nor represented that Defendants had the capacity and skill to perform when they could not.

## COUNT III

### (Conversion)

57. Plaintiff repeats and re-alleges paragraphs 1-56 of this Complaint

58. Defendants' keeping over $20,000 of money that is owed to Plaintiff in allegations outlined in this complaint constitute the exercising dominion and control over personal property that they have no right to.

59. Defendants' refusal to return the said money demonstrates that this dominion and control being exercised was intentional.

## COUNT IV

### (Unjust Enrichment)

60. Plaintiff repeats and re-alleges paragraphs 1-59 of this Complaint.

61. Plaintiff's payment to Defendants constitutes a benefit that was conferred upon the Defendants.

62. Defendants had knowledge that they received a benefit from the Plaintiff.

63. Defendants' retention of $21,000 that they are not entitled to would make the retention of the benefit inequitable under the circumstances.

## COUNT V

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

64. Plaintiff repeats and re-alleges counts 1-63 of this Complaint.

65. The  implied covenant of good faith and fair dealing provides  "that  neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Anthony's Pier Four, Inc.* v. *HBC Associates*, 411 Mass. 451 (1991).

66. Defendants, by keeping money that they are not entitled to, and by failing to perform under the contract have injured Plaintiff's right to receive the fruits of the contract.

## COUNT VI

### (Violations of G.L. c. 93A)

67. Plaintiff repeats and re-alleges counts 1-66 of this Complaint.

68. At all times relevant, Defendants were engaged in "trade or commerce" within the meaning of G.L. c. 93A.

69. Defendants failure to include necessary contractual language in accordance with G.L. c. 142A, abandoning and/or failing to perform the work under the agreement, leaving Plaintiff's property in violation of building codes, failure to pay for materials or services after Plaintiff provided the funds for them, breaching of their contract with the Plaintiff, keeping money that was owed to Plaintiff, misrepresenting their capacity to perform under the contract while subjecting Plaintiff to monetary losses, failing to effectively communicate with Plaintiff and knowingly performing their obligations under the agreement with poor workmanship are "unfair and deceptive" acts or practices within the meaning of G.L. c. 93A.

70. Plaintiff served a thirty-day demand letter under G.L. c. 93A § 9.

71. If Plaintiff is considered to be engaged in trade or commerce in operating a commercial property, no demand letter is required under G.L. c. 93A §11.

72. Plaintiffs suffered monetary damages as a result of the enumerated unfair and deceptive acts or practices.

WHEREFORE, Plaintiff requests money damages in the amount to be proven at trial, double or treble damages allowed under G.L. c. 93A, plus attorney fees, costs, interest and any other relief that the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY ON ALL COUNTS SO TRIABLE**

Plaintiff, Joseph Cipcic
by his Attorney,


_____/s/ Ryan P. McLane_____
Ryan P. McLane (BBO # 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com