UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH CIPCIC,<br>    Plaintiff,<br><br>v.<br><br>GARY GROUT<br>and<br>COMPLETE RESTORATION SOLUTIONS, INC.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 22-30129-MGM<br>)<br>)<br>)<br>)<br>) |

**JOINT REPORT OF THE PARTIES PURSUANT TO FED. R. CIV. P 26(f) and L.R. 16.1**

Plaintiff Joseph Cipcic and Defendants Gary Grout and Complete Restoration Solutions, Inc. ("CRS")(collectively, "Defendants") conferred through their respective counsel on Monday, January 9, 2023, and submit this Joint Report pursuant to FED. R. CIV. P. 26(f) and LOC. R. 16.1. The Parties shall submit their respective LOC. R. 16.1(d)(3) Certifications separately. The Parties state that the action presently is not suitable for alternative dispute resolution.

**Statement of the Case**

1.      **Plaintiff's Summary.** Defendants caused Plaintiff needless damage by failing to meet their obligations under the home improvement contract between the parties. Specifically, the parties contracted for Defendants to repair fire damage and other services in exchange for $191,491.83. Defendants failed to meet their deadlines on more than one occasion after inducing Plaintiff to enter the agreement based on Defendants' representations that the work could be completed on time. The delays led to significant property damage and delayed occupation of the dwelling. The work that was performed was either poor workmanship or was not complete. Plaintiff asserts claims for breach of contract, misrepresentation, conversion, unjust enrichment and G.L. c. 93A, after having served a 30-day demand letter upon defendants. Plaintiff's

damages include money provided to Defendants for work that was not completed, the costs of repairing Defendants' poor workmanship and completion of remaining work and Plaintiff's lost rental income from the multiple missed deadlines.

    2.    **Defendants' Summary.**  Plaintiff and Defendant CRS entered into a contract on or about March 22, 2021, which consisted of a Contract & Payment Authorization, a Payment Schedule, and an itemization of work to be performed and materials to be supplied (the "Contract") for repair of fire damage (the "Project") at 715 Grattan Street, Chicopee, Massachusetts (the "Premises").  Under the Contract, the Plaintiff was to pay CRS the Replacement Cost Value of $191,491.83, less depreciation in the amount of $37,623.72, in three installments of one-third each, which amounted to $51,289.37 per installment, with the balance of $37,623.72 to be paid in a fourth and final installment.  CRS received one check from Plaintiff's bank in the amount of $50,776.48.

    CRS encountered delays with the Project at times due to the COVID-19 pandemic and because of difficulties in finding subcontractors available to work.  Pursuant to Article 4 of the Contract, CRS was not and is not liable for delays beyond its control.  The direction and scope of the Project also changed several times at the request of the Plaintiff, which meant the job had to be reworked as far as budget and allowances.  The changes in direction and scope of the Project caused delays in its completion that also were not the fault of the Defendants.

    Plaintiff subsequently demanded that CRS cease working on the Project before the work was completed and further advised CRS that he was terminating their working relationship.  CRS and its subcontractors performed work for the Plaintiff pursuant to the Contract totaling $71,754.36 up to the time the Plaintiff demanded that CRS cease working on the Project. CRS presented a detailed invoice itemizing the work it performed on the Project and the charges for

that work.  CRS fully performed under the Contract until such time as Plaintiff demanded that CRS cease work on the Premises.  The Plaintiff knew that CRS was performing work on the Premises to repair fire damage, and the Plaintiff benefitted financially from CRS's work.  Plaintiff has failed to pay CRS the full amount due and still owes CRS a balance of $20,977.88.

## Proposed Discovery Plan

The Parties, pursuant to Loc. R. 16.1(d)(1)(a) and (b), conferred about their obligations to limit discovery as set forth in Fed. R. Civ. P. 26(b), and have taken into account the "desirability of phased discovery" in which the first phase "is limited to developing information needed" for each party to obtain a "realistic assessment of the case." In that regard, the Parties agree as follows:

1. Phased Discovery.  This case does not involve voluminous discovery, and the Parties do not believe that phased discovery is warranted.

2. Settlement or Alternative Dispute Resolution.  The Parties, through counsel, have conferred regarding the potential resolution of this matter by settlement or submission to non-binding mediation.  Agreement on that issue has not yet been reached.

3. Initial Disclosures.  The Plaintiff has produced his initial disclosures to the Defendants.  The Defendants are in the process of gathering information and preparing their initial disclosures and will produce them to the Plaintiff within the time period established in Fed. R. Civ. P. 26(a)(1)(C).

4. Fact Discovery.  Fact discovery to end on June 30, 2023, with all written discovery requests to be served so that responses are due before the closure of fact discovery and all depositions of fact witnesses scheduled prior to that date.

5. <u>Expert Disclosures.</u>  Plaintiff's expert disclosures due by July 31, 2023. Defendants' expert disclosures due by August 31, 2023.

6. <u>Expert Depositions.</u>   All expert deposition to be completed by October 31, 2023.

7. <u>Summary Judgment.</u>  Motions for summary judgement to be served by December 31, 2023.

8. <u>Status Conference.</u>  Status conference to be scheduled following ruling on any motions for summary judgement filed by the Parties.  In the event that no summary judgement motions are filed, the Parties will prepare and submit a joint motion for a status conference no later than December 31, 2023.

## Other Matters

1. <u>Protective Orders.</u>  The Parties do not anticipate the need for a protective order in this case.

2. <u>Written Demands.</u>  The Parties have each made written demands for their claims and/or counterclaims as required under Local Rule 16.1(c).

3. <u>Electronically Stored Information.</u>  The Parties do not anticipate that there will be a significant amount of electronically stored information (ESI) to be produced in discovery in this case.  After the Parties serve discovery requests, they will confer in good faith about the collection, review and production of any responsive ESI, including the form and format for the production of ESI and the scope and extent of metadata to be included in any such production. The Parties further will confer and discuss any sources of information that either Party claims is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

4. <u>Local Rule 16.1(d)(3) Certifications.</u>  Counsel for both Parties also represent that they have conferred with their respective clients regarding the matters set forth in Local Rule

16.1(d)(3)(A) and (B).

5. <u>Magistrate Judge.</u>  The Parties have not agreed to consent a trial before the Magistrate Judge, but are in discussions regarding that matter.

## **Proposed Agenda for Conference**

The Parties propose to discuss the proposed discovery plan and other matters addressed in this joint report at the conference.

Respectfully submitted,

                                                                  GARY GROUT and
COMPLETE RESTORATION
 SOLUTIONS, INC.,
Defendants,

By:     */s/ Thomas J. O'Connor, Jr*
Thomas J. O'Connor, Jr., Esq.
BBO 640433
1391 Main Street, Suite 1022
Springfield, MA  01103
(413) 781-5311 Tel.
(413) 327-0014 Fax
attorneytomoconnor@gmail.com


 Plaintiff, Joseph Cipcic
 by his Attorney,

   */s/ Ryan P. McLane*
Ryan P. McLane (BBO #697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com